UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

KATHLEEN M. VIATOR,            )
                              )
                Plaintiff     )
                              )
        v.                    )   Case No. 2:06-CV-3
                              )
DEPUTY CATHY HREBENYAK,        )
DEPUTY JOHN DOE, and          )
THE COUNTY OF LAKE,            )
                              )
                Defendants    )

OPINION AND ORDER

This matter is before the court on the Joint Motion for Summary Judgment filed by the defendants, Deputy Cathy Hrebenyak, Deputy John Doe, and The County of Lake, on July 5, 2007. (DE 35-1)  For the reasons set forth below, the Motion is **GRANTED**.

Background

In plaintiff's Response to Defendants' Motion for Summary Judgment, Kathy Viator acknowledges she does not contest the Statement of Material and Undisputed Facts presented by the defendants.  (Pltf. Resp. p. 1 (DE 36-1))  Therefore, the relevant background information will be taken from that document and supplemented, as noted, where necessary.

Kathy Viator, the plaintiff, worked in the computer lab of the Lake County High Intensity Drug Trafficking Area ("HIDTA") from January 2002 until she resigned in October 2004.  As a Systems Administrator, she was responsible for securing the HIDTA computer network, implementing a new server and related work equipment, servicing computers and the network, and assisting

with computer forensic investigations. (Amended Complaint ¶ 10)
Viator's responsibilities also included purchasing some of the
computer inventory for HIDTA. (Am. Comp. ¶ 11)  During the summer
of 2002, Viator was working through a vendor to resolve HIDTA's
computer problems with the IDACS system, a nationwide data bank
of information that is maintained by law enforcement agencies.
She was instructed by the vendor to get a non-proprietary com-
puter in order to work with the IDACS system.  Viator contacted
her husband's cousin, Paulette Hill, the owner of Professional
Information Services, Inc. ("PIS"), and placed an order for a new
desktop computer for HIDTA.  She picked up the computer from PIS
on July 2, 2002.  The computer initially was not checked into the
HIDTA facility nor was it recorded on the inventory list of
property.

On July 5, 2002, PIS billed HIDTA for the computer in the
amount of $1,075, and the invoice was made to the attention of
Kathy Viator.  On July 18, 2002, a Purchase Request for the
computer was approved by Linda James, HIDTA's Fiscal Officer, and
Don Sturn, HIDTA's Director.  A note on the form indicates that
emergency approval for the order previously was received from
James on July 2, 2002. (Pltf. Resp. Exh. 6, p. 4)

In the early months of 2004, administrative changes occurred
at HIDTA. (Am. Comp. ¶ 13)  Sturn was asked to leave as the
Director of HIDTA, and Garnett Watson, Jr., the Gary Chief of
Police, was installed as the interim Director.  Ultimately, the

Executive Board voted to close the HIDTA Computer Forensics Laboratory by December 31, 2004. (Am. Comp. ¶14)

Prior to the closure and days before Viator's departure, Bond Wells, a federal DEA agent serving as an analyst for HIDTA, and Jon Pitts, the Property Management Officer ("PMO") of HIDTA, conducted a property inventory of the Computer Forensics Laboratory.  The inventory revealed that the desktop computer purchased by Viator in July 2002 was missing.  When Pitts initially asked Viator about the computer and showed her copies of the invoice and paperwork, she denied any knowledge of the computer.

On October 7, 2004, Watson sent a letter to Lake County Sheriff Rogelio "Roy" Dominguez, the chairman of the HIDTA Executive Board, and requested that an investigation be conducted into the circumstances surrounding the missing computer.  The defendant, Detective Sergeant Cathy Hrebenyak, was assigned to the investigation.

During the course of her investigation, Hrebenyak learned that Viator worked alongside Officer Scott Sutton while at HIDTA. During an unrelated investigation into Sutton for possession of child pornography, Sutton had turned over a computer to the Lake County Sheriff's Department.  On October 8, 2004, Hill examined the computer previously seized from Sutton and identified it as the same computer that had been built and sold to HIDTA.  Hrebenyak obtained a signed, written statement from Hill regarding this examination.  She also obtained a signed, written statement from Pitts confirming that the computer purchased by Viator never was

3

logged into the HIDTA inventory system, that HIDTA employees were not allowed to use and keep HIDTA computers for their personal use, and that the High Tech Crime Initiative computer area was equipped with a camera monitored door locking security system. (Def. Joint Mot. for Sum. Judg. Exh. 1, Pitts Stmt. pp. 8-10) Don DeFrance, who worked with the IDACS system at HIDTA as a criminal intelligence analyst during the time in question, also gave a signed, written statement to Hrebenyak that he was not aware of anyone at HIDTA ever being allowed to take home a CPU tower for personal use and that the computer in question never was logged into the HIDTA inventory system. (Def. Joint Mot. for Sum. Judg. Exh. 1, DeFrance Stmt. p. 12) Hrebenyak then obtained a signed, written statement from James indicating that Viator did not have the authority to purchase any computer without prior approval but that she did so routinely. (Def. Joint Mot. for Sum. Judg. Exh. 1, James Stmt. p. 14)

On October 26, 2004, Hrebenyak met with Lake County Deputy Prosecutor David Kowalczyk who advised Hrebenyak to confirm with Sturn that he did not give Sutton or Viator permission to take home the computer in question. Hrebenyak contacted Sturn and spoke with him over the phone. On November 17, 2004, Sturn faxed a typed memo to Hrebenyak in reference to the phone conversation. The fax stated, in part, "As I advised you, to the best of my memory, at no time did I ever give approval or authorization for any HIDTA employee to remove a HIDTA purchased desk top computer unit (one with a tower), from HIDTA office space, for their own,

4

or other use." (Def. Joint Mot. for Sum. Judg. Exh. 2, p. 3)
Hrebenyak presented her final investigation summary, including
copies of the written statements, the fax from Sturn, and other
documents aquired during the course of her investigation, to
Kowalczyk on November 19, 2004.

On March 7, 2005, Kowalczyk filed an Information and
Probable Cause Affidavit charging Viator with Theft, a Class D
Felony.  The probable cause affidavit was reviewed and signed by
Hrebenyak. (Def. Mot. for Sum. Judg. Exh. 4, pp. 1-4)  Based on
the affidavit, Magistrate Natalie Bokota entered an order finding
probable cause to charge Viator with theft and issued a warrant
for her arrest. (Def. Mot. for Sum. Judg. Exh. 4, p. 5)

On March 8, 2005, Viator surrendered herself on the out-
standing arrest warrant. (Am. Comp. ¶ 23)  The assistant Chief of
Police at the time, Marco Kuyachich, booked Viator in the
warden's office, she was fingerprinted and photographed, and then
she was released immediately on a $1,000 bond.  A deposition of
Sturn was taken after charges were filed against Viator and
Sutton, and he recanted the statements made in the fax sent to
Hrebenyak in November of 2004.  The charges against Viator were
dismissed by the trial court for lack of probable cause on
September 30, 2005. (Am. Comp. ¶ 25)

On January 3, 2006, Viator filed suit against Hrebenyak,
Deputy John Doe, and The County of Lake under 42 U.S.C. §1983.
The complaint was amended on June 9, 2006.  Viator alleged
Hrebenyak, Doe, and Lake County intentionally, or with deliberate

indifference and callous disregard, deprived her of her right to be free of unreasonable seizures and searches in violation of the Fourth and Fourteenth Amendments. (Am. Comp. ¶ 27)  Viator also alleged state law claims of false arrest and malicious prosecution. (Am. Comp. ¶¶ 29, 33)

On July 25, 2007, Attorney Stanley W. Jablonski, who represented  Sutton, provided an affidavit stating that he met with Deputy Prosecuting Attorney Barbara McConnell before charges were filed in an effort to persuade her that insufficient evidence existed to charge his client with theft of the computer. (Pltf. Resp. p. 23)  Jablonski stated that Sutton provided him with copies of emails between Viator and Sturn relating to the criminal investigation against Sutton. (Pltf. Resp. p. 24)  In response to one of Viator's emails informing Sturn that Sutton was being charged criminally for the theft of the computer, Sturn stated, "I cannot believe that is based on my statement.  They must know that I would never testify for them, especially againsty [sic] Scott." (Pltf. Resp. p. 37)  Jablonski stated that he provided McConnell with those emails. (Pltf. Resp. p. 24)

<u>Discussion</u>

The defendants jointly seek summary judgment on all of Viator's federal and state law claims.

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *See **Celotex Corp. v.***

6

*Catrett*, 477 U.S. 317, 322-23, 91 L.Ed.2d 265, 106 S.Ct. 2548
(1986); *Williams v. Excel Foundry & Machine, Inc*, 489 F.3d 309,
310 (7th Cir. 2007); *Treadwell v. Office of the Illinois Secre-
tary of State*, 455 F.3d 778, 781 (7th Cir. 2006); *Branham v.
Snow*, 392 F.3d 896, 901 (7th Cir. 2004).  The burden is upon the
moving party to establish that no material facts are in genuine
dispute, and any doubt as to the existence of a genuine issue
must be resolved against the moving party. *Adickes v. S.H. Kress
& Company*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d
142, 155 (1970); *Lawrence v. Kenosha County*, 391 F.3d 837, 841
(7th Cir. 2004) 391 F.3d at 841. A fact is material if it is
outcome determinative under applicable law. *Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d
202, 212 (1986); *Ballance v. City of Springfield, Illinois Police
Department*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v.
Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004); *Palmer
v. Marion County*, 327 F.3d 588, 592 (7th Cir. 2003).  Even if the
facts are not in dispute, summary judgment is inappropriate when
the information before the court reveals a good faith dispute as
to inferences to be drawn from those facts. *Spiegula v. Hull*,
371 F.3d 928, 935 (7th Cir. 2004); *Hines v. British Steel Corpo-
ration*, 907 F.2d 726, 728 (7th Cir. 1990).  Finally, summary
judgment "will not be defeated simply because motive or intent
are involved." *Roger v. Yellow Freight Systems, Inc.*, 21 F.3d
146, 148 (7th Cir. 1994). *See also Miller v. Borden, Inc.*, 168
F.3d 308, 312 (7th Cir. 1999); *Plair v E.J. Brach & Sons, Inc.*,

105 F.3d 343, 346 (7th Cir. 1997); *United Association of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1268 (7th Cir. 1990).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold in-
> quiry of determining whether there is the
> need for a trial--whether, in other words,
> there are any genuine factual issues that
> properly can be resolved only by a finder of
> fact because they may reasonably be resolved
> in favor of either party.
>
> [T]his standard mirrors the standard for a
> directed verdict under Federal Rule of Civil
> Procedure 50(a), which is that the trial
> judge must direct a verdict if, under the
> governing law, there can be but one reason-
> able conclusion as to the verdict.
>
> *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511

*See also* *Scott v. Harris*, ___ U.S. ___, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment."); *Celotex Corp.*, 477 U.S. at 322-323, 106 S.Ct. at 2553; *Branham*, 392 F.3d at 901; *Lawrence*, 391 F.3d at 841; *Hottenroth*, 388 F.3d at 1027 (stating that a genuine issue is one on which "a reasonable fact finder could find for

8

the nonmoving party"); *Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 573 (7th Cir. 2003).

As an initial matter, the court disposes of the claims against Detective John Doe and Lake County.  In her Response to Defendants' Joint Motion for Summary Judgment, Viator affirmatively concedes her claims apply only to Hrebenyak.  (Pltf. Resp. p. 2 n.1)  Additionally, Viator does not contest Hrebenyak's request for summary disposition on the Fourteenth Amendment *Brady v. Maryland* claims.  *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1983).  Summary judgment is granted on these claims, and the remaining  discussion will proceed as it relates to Hrebenyak only.

Section 1983 creates a federal cause of action for the deprivation, under color of state law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States.  *Spiegel v. Rabinovitz*, 121 F.3d 251, 254 (7th Cir. 1997).  Section 1983 is not itself a source of substantive rights: it is a means for vindicating federal rights conferred elsewhere. *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997).  The initial step in any §1983 analysis is to identify the specific constitutional right which allegedly was violated. *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 1870-71, 104 L.Ed.2d 443 (1989); *Kernats v. O'Sullivan,* 35 F.3d 1171, 1175 (7th Cir. 1994).

Once a violation is identified, the plaintiff must show that the alleged deprivation was committed by a person acting under

color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct.
2250, 2254-55, 101 L.Ed.2d 40 (1988); *Payton v. Rush-Presbyter-
ian-St. Luke's Medical Center*, 184 F.3d 623, 628 (7th Cir. 1999).
"To constitute state action, the deprivation must be caused by
the exercise of some right or privilege created by the State
. . . or by a person for whom the State is responsible, and the
party charged with the deprivation must be a person who may
fairly be said to be a state actor.  [S]tate employment is
generally sufficient to render the defendant a state actor."
*West,* 487 U.S. at 49-50, 108 S.Ct. at 2255 (internal quotations
and citations omitted).  Additionally, a defendant cannot be held
liable for deprivations that he did not personally cause either
by direct action or by approval of conduct of others.  Vicarious
liability cannot support a claim.  *See generally Monell v.
Department of Social Services of City of New York*, 436 U.S. 658,
98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  "Indeed, the fact that
Congress did specifically provide that A's tort became B's
liability if B 'caused' A to subject another to a tort suggests
that Congress did not intend §1983 liability to attach where such
causation was absent." *Monell*, 436 U.S. at 692, 98 S.Ct. at 2036.

It is not disputed that Hrebenyak acted under color of law.
Instead, the inquiry solely focuses on whether an actionable
violation occurred at all and if so, whether Hrebenyak is pro-
tected by an affirmative defense.  Viator alleges that Hrebenyak
violated her rights under the Fourth Amendment by instituting an
illegal arrest, seizure, and detention.  The Fourth Amendment

protects individuals against unreasonable searches and seizures by providing that warrants shall issue only upon probable cause. Therefore, a violation can occur if a law enforcement officer's affidavit requesting an arrest warrant lacks probable cause.

The existence of probable cause, however, precludes a §1983 suit for false arrest. *See Pourghoraishi v. Flying J, Inc.,* 449 F.3d 751, 762 (7th Cir. 2006); *Morfin v. City of East Chicago,* 349 F.3d 989, 997 (7th Cir. 2003); *Ochana v. Flores,* 347 F.3d 266 (7th Cir. 2003). Probable cause is a fluid concept. An arrest is supported by probable cause if, at the time of the arrest, the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed a crime. *Spiegal v. Cortese,* 196 F.3d 717, 725 n.1 (7th Cir. 1999). *See also Edwards v. Cabrera,* 58 F.3d 290, 292 (7th Cir. 1995). "Probable cause is a commonsense determination, measured under a reasonableness standard." *Gower v. Vercler,* 377 F.3d 661, 668 (7th Cir. 2004). In deciding whether probable cause exists, law enforcement officers are entitled to draw reasonable inferences based on their own training and experience. *U.S. v. Carrillo*, 269 F.3d 761, 766 (7th Cir. 2001). The Constitution does not require an arresting officer to conduct an incredibly detailed investigation at the probable cause stage. *Spiegal,* 196 F.3d at 724-25. "Determinations of probable cause are naturally based on probabilities, and a finding of probable cause does not require evidence sufficient to support a convic-

11

tion, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *United States v. Funches*, 327 F.3d 582, 586 (7th Cir. 2003) (internal quotations omitted).  Once an officer has trustworthy information that leads him to reasonably believe that probable cause exists, he is entitled to rely on that information and is under no further duty to investigate.  *Beauchamp v. City of Noblesville, Indiana*, 320 F.3d 733 (7th Cir. 2003).  A state court's determination of probable cause in a criminal case is not conclusive on the same issue in a subsequent civil action under §1983 in federal court. *Booker v. Ward*, 94 F.3d 1052, 1057 (7th Cir. 1996).

Hrebenyak argues that even if probable cause was lacking in her affidavit, she is entitled to qualified immunity.  Although the privilege of qualified immunity is a defense, the plaintiff carries the burden of defeating it.  *Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 968 (7th Cir. 2003).  Whether a defendant is entitled to qualified immunity is a two-step analysis.  The court first must determine whether the facts show that the defendant's conduct violated a constitutional right.  If so, the focus turns to whether that right was clearly established at the time of the alleged injury, such that a reasonable officer would understand that his actions were in violation of that right. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).  Qualified immunity provides ample protection to police officers preparing a probable cause affidavit except where the law is knowingly violated or the officer was plainly

incompetent when doing so.  *Malley v. Briggs*, 475 U.S. 335, 341,
106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).  "Defendants will
not be immune if, on an objective basis, it is obvious that no
reasonably competent officer would have concluded that a warrant
should issue; but if officers of reasonable competence could
disagree on this issue, immunity should be recognized." *Malley*,
475 U.S. at 341, 106 S.Ct. at 1092.  Only where the warrant
application is so lacking in indicia of probable cause as to
render official belief in its existence unreasonable will the
shield of immunity be lost.  *U.S. v. Leon*, 468 U.S. 897, 923, 104
S.Ct. 3405, 3421, 82 L.Ed.2d 677 (1984).  The determination of
whether individual defendants are immune from liability is a
decision for the court, rather than for a jury.  *Hughes v. Meyer*,
880 F.2d 967, 971 (7th Cir. 1989).

An officer violated the plaintiff's rights only if a reason-
ably well-trained officer in the same position should have known
that the information he provided in support of the warrant would
have failed to establish probable cause, so that he should not
have applied for the warrant in the first place.  *Malley*, 475
U.S. at 345, 106 S.Ct. at 1092; *Beauchamp*, 320 F.3d at 742.  To
do this, the plaintiff must provide evidence that the defendant
intentionally or with a reckless disregard for the truth, made
false statements to the magistrate, and that those false state-
ments were necessary to the determination that probable cause
existed for the arrest.  *Beauchamp*, 320 F.3d at 742.  A reckless
disregard for the truth may be demonstrated by showing that the

13

officer entertained serious doubts as to the truth of the state-
ments, had obvious reasons to doubt the accuracy of the informa-
tion reported, or failed to inform the judicial officer of facts
he knew would negate probable cause. **Beauchamp**, 320 F.3d at 743
(*citing* **United States v. Whitley**, 249 F.3d 614, 620-21 (7th Cir.
2001); **Neiman v. Keane**, 232 F.3d 577, 580 (7th Cir. 2000)).

Viator asserts that there are genuine issues of material
fact as to whether Hrebenyak had a reasonable basis to believe
probable cause existed to file charges against her.  She main-
tains Hrebenyak recklessly disregarded the truth in executing the
probable cause affidavit because there were reasons to doubt the
accuracy of the information she reported and because the affida-
vit contained material omissions.  However, she concedes that
none of the material statements contained in the probable cause
affidavit were false, untrue, or fabricated.  After reviewing the
record, this court concludes there was probable cause to arrest
Viator.

A main thrust of Viator's argument focuses on the email sent
to Viator from Sturn stating he would not testify against Sutton.
Viator claims Hrebenyak acknowledges being told about the Sturn
email and its substance, although she does not recall who it was
that told her. (Pltf. Resp. p. 3)  However, the referenced
portion of Hrebenyak's deposition is not included in the record.
Therefore, the only mention of the email available in the record
and directly attributable to Hrebenyak is an undated, hand-
written note from her investigation stating, "Email from Don

14

Sturn basically saying he won't testify against." (Pltf. Resp. Exh. 2, p. 16)

Although Viator makes much of this note, the fact remains that the question of whether Sturn would testify at Sutton's future trial is immaterial to the issue of whether Hrebenyak had probable cause to believe Viator was guilty of theft.  Sturn sent the email to Viator on December 9, 2004, which was almost three weeks after Hrebenyak submitted her final report to Kowalczyk on November 19, 2004.  The note does not negate the fact that Sturn did indeed fax Hrebenyak a statement confirming that, to the best of his memory, he did not give approval or authorization for any HIDTA employee to remove a HIDTA computer for personal use.  This fax was included in the packet of information presented to Kowalczyk in Hrebenyak's final summary, per his request.  Although Sturn later recanted this statement in a deposition, at the time charges were filed, Hrebenyak did not know for certain that Sturn would refuse to testify.  She was not under a duty to investigate Sturn's intentions further at the time the probable cause affidavit was filed. Additionally, that Jablonski, Sutton's attorney, provided McConnell with the email shortly before charges were filed is immaterial to Hrebenyak's probable cause determination.  Viator is suing Hrebenyak in this action, not the prosecutor's office. *Spiegel*, 196 F.3d at 725 ("We refuse to require law enforcement officers to delay arresting a suspect until after they have conclusively resolved each and every

15

inconsistency or contradiction in a victim's [or witness's] account.").

Viator also makes reference to additional emails given to Jablonski by Sutton regarding the date on which Sutton was certified as having completed an examination. (Pltf. Resp. Exh. 3A, pp. 26-27)  The email confirms the software was activated on March 25, 2004, and supports the argument that Sutton used the computer for HIDTA purposes while at home.  However, there is no evidence in the record that Hrebenyak received this email from McConnell.  An undated, hand-written note taken during Hreben-yak's investigation stating that the computer "remained unlogged in until 1/2003" and that "SS took computer home to prepare for exam for computer forensics exam (study @ home)" does not serve to negate the undisputed facts that Viator picked up the computer from PIS, the computer never was logged into the HIDTA inventory system, and the computer later was discovered in possession of Sutton, the person whom Viator worked closely with at HIDTA. Also, that the email was presented by Jablonski to McConnell does not serve to establish that Hrebenyak intentionally or recklessly made material misstatements or omissions in the probable cause affidavit regarding that email.

Next, Viator asserts that there are a number of other misstatements and omissions in the probable cause affidavit. Viator claims Hrebenyak had no reasonable basis to support the proposition that the computer never arrived at the HIDTA facility after Viator picked it up from PIS.  However, in her final

16

investigation summary presented to Kowalczyk on November 19,
2004, Hrebenyak included copies of signed, written statements
from Pitts and DeFrance which confirmed that the computer never
was logged into the HIDTA inventory system.  (Def. Joint Mot. for
Sum. Judg. Exh. 1, pp. 8-12)  Pitts' statement also confirmed
that when he asked Viator if she knew where the computer was, she
claimed she did not know what he was talking about and denied any
knowledge of the computer even after being shown paperwork.
Viator does not suggest that, at the time Hrebenyak conducted her
investigation and filed her probable cause affidavit, Hrebenyak
had reason to believe that Pitts and DeFrance were not credible,
were being untruthful, or did not have personal knowledge of the
situation.  Also, that Hrebenyak had memoranda from Viator to
Sturn regarding the computer being purchased and set up for the
IDACS system does nothing to dispute that the computer never was
logged into the facility and was discovered missing during an
inventory conducted shortly before Viator left HIDTA.  Hrebenyak
reasonably relied on the statements collected during her investi-
gation, and there was no need to conduct a more detailed explora-
tion of each statement at the probable cause stage.  *See **Spiegel***,
196 F.3d at 724-25; ***Mannoia v. Farrow***, 476 F.3d 453, 457 (7th
Cir. 2007)("[P]robable cause is only a probability or substantial
chance of criminal activity, not a certainty that a crime was
committed.").

     Viator claims Hrebenyak omitted additional details in the
probable cause affidavit from James' statement regarding the

17

approval process for purchasing computers.  However, the informa-
tion was not material to the probable cause determination as a
whole, especially since a copy of the full James' statement was
submitted to Kowalczyk in Hrebenyak's final report.  The same is
true regarding Hill's written statement containing the reference
to her personal belief that the computer made it to HIDTA.  A
copy of the complete written statement was provided to Kowalczyk
by Hrebenyak.  *See **Kijonka v. Seitzinger***, 363 F.3d 645, 648 (7th
Cir. 2004) (consulting a prosecutor goes far to establish quali-
fied immunity).

Viator also asserts it is a material omission that the
probable cause affidavit did not mention Secret Service Agent
Darren Kimes' computer forensics report.  (Def. Joint Mot. for
Sum. Judg. Exh. 3, pp. 1-5)  At the request of  McConnell, the
report was conducted by Kimes pursuant to a consent given on
February 9, 2005, which was several months after Hrebenyak
submitted her final report to Kowalczyk.  The report found the
login name KVIATOR had been used on the computer in August of
2002 to access the internet, and it also showed that files were
located on the same hard drive with the user name IDACS.  While
this does appear to suggest that the computer may possibly have
been at HIDTA at some point, the facts remain that the computer
never was logged into the HIDTA inventory system after Viator
picked it up from PIS and that it later was discovered missing.
Hrebenyak was not required to resolve every inconsistency in the

18

investigation at the probable cause stage before making an arrest. *Spiegel*, 196 F.3d at 724.

Finally, Viator asserts Hrebenyak did not act reasonably as a law enforcement officer based on several handwritten notes taken during her investigation. Many of the notes Viator claims are unreasonable pertain to Hrebenyak's tactics for interviewing Viator. For example, one of the notes states, "Don't let Kathy know the computer has been found. Lock her into statement, signed & then broach subj." Viator claims that because Hrebenyak did not include these handwritten notes in her final summary to Kowalczyk, she somehow acted unreasonably. Viator fails to address the fact that Hrebenyak never interviewed her. Hrebenyak left several messages for Viator for the purpose of obtaining her version of the events, but Viator never gave a statement to Hrebenyak. Hrebenyak was not required to provide a prosecutor with notes regarding an interview that never took place. As Hrebenyak points out, there is no requirement that a police officer turn over every single document compiled during an investigation to a prosecutor. Also, although Viator claims the notes lead to an inference that Hrebenyak wished to "pursue her theory that Viator never delivered the computer to HIDTA," the probable cause affidavit does not state the computer never was at HIDTA. Instead, the affidavit states that the computer could not be located after an inventory report and that it had not been checked into the HIDTA facility or recorded on the inventory list

19

of property.  Viator's arguments regarding the handwritten notes
are irrelevant to the ultimate probable cause determination.

Based on the state of the record presented, probable cause
existed to arrest Viator for theft.  There is no evidence in the
record to substantiate Viator's claims that Hrebenyak acted in
bad faith or with a reckless disregard for the truth in conduct-
ing her investigation or preparing the probable cause affidavit.
Because Hrebenyak cannot be found to have violated Viator's
constitutional rights, it is not necessary to consider whether
the right was clearly established at the time of the injury.  *See*
***Mannoia***, 476 F.3d at 459; ***Saucier***, 533 U.S. at 201, 121 S.Ct. at
2151.  Hrebenyak is immune from suit under Viator's §1983 claim.

Additionally, the existence of probable cause to arrest pre-
cludes both state claims for false arrest and malicious prosecu-
tion.  *See* ***Butt v. McEvoy***, 669 N.E.2d 1015, 1017 (Ind. App. 1996)
(A claim for malicious prosecution requires proof of four ele-
ments, one being that the prosecution was instituted without
probable cause.); ***Conwell v. Beatty***, 667 N.E.2d 768, 775 (Ind.
App. 1996) ("[P]roof of the absence of probable cause is essen-
tial to the plaintiff's cause of action for false arrest.").
Therefore, Hrebenyak is not liable for Viator's false arrest or
malicious prosecution claims.  Accordingly, these claims also are
dismissed. *See* ***Mannoia,*** 476 F.3d at 459 ("In addition, our find-
ing that the arrest warrant was supported by probable cause
precludes Mannoia from recovering on his claims of false arrest

20

and malicious prosecution because under Illinois law, lack of probable cause is an essential element of both torts.").

———————————

For the reasons set forth above, the Joint Motion for Summary Judgment filed by the defendants, Deputy Cathy Hrebenyak, Deputy John Doe, and The County of Lake, on July 5, 2007, is **GRANTED**.

ENTERED this 20th day of November, 2007

s/ ANDREW P. RODOVICH
United States Magistrate Judge

21